IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISA MORRIS,

    Plaintiff,           No. CIV S-05-0868 GGH

  vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,
                                  ORDER

    Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born August 10, 1967, applied for disability benefits on October 28, 2002. (Tr. at 48.) Plaintiff alleged she was unable to work since August 8, 2002, due to depression. (Tr. at 48, 175, 56.) In a decision dated June 5, 2004, ALJ L. Kalei Fong determined

\\\\\

that plaintiff was not disabled.[1]  The ALJ made the following findings:

    1.    The claimant does not meet insured status requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act.  For the purposes of qualifying for Medicare, the claimant met the insured status requirements through December 31, 2003.

    2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    3.    The claimant's bipolar disorder, hypertension and obesity are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

    4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

    Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
    Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
    Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
    Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
    Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

|   |   |   |
|---|---|---|
|   |   | forth in the body of the decision. |
|   | 6. | The claimant's residual functional capacity is as stated in the body of this decision. |
|   | 7. | The claimant's past relevant work as mail clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965). |
|   | 8. | The claimant's medically determinable bipolar disorder, hypertension and obesity do not prevent the claimant from performing her past relevant work. |
|   | 9. | The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e)). |

(Tr. at 21.)

ISSUES PRESENTED

Plaintiff has raised the following issues: (A) Whether the ALJ Erred in not Addressing All Restrictions Imposed by the Consultative Examiner; and (B) Whether the ALJ Should Have Used the Testimony of a Vocational Expert in Determining Plaintiff's Residual Functional Capacity.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational

1 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
2 Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).
3 ANALYSIS
4    A. Whether the ALJ Erred in not Addressing All Restrictions Imposed by the
5 Consultative Examiner
6    Plaintiff claims that the ALJ did not consider consulting physician Dr. Joyce's
7 opinion that plaintiff's bipolar disorder would interfere with her ability to maintain work about
8 two to three times per year.

> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.

13 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).
14    The ALJ found that Dr. Joyce's opinion was consistent with the state agency
15 physicians who had completed residual functional capacity assessments and concluded that
16 plaintiff could do light work with some postural limitations of occasional stooping, crouching
17 and crawling, due to plaintiff's obesity. (Tr. at 19.) In regard to her mental functioning, these
18 physicians thought plaintiff could do simple repetitive or complex tasks, and would be
19 moderately limited in interactions with the public, peers and changes in the work setting. (Id.)
20 Dr. Joyce was in agreement in this regard. (Tr. at 121-28, 132-35, 111-15.) Dr. Joyce differed
21 from these other physicians in noting that plaintiff's "bipolar disorder might interfere with her
22 workday or workweek about 2-3 times per year." (Id. at 20, 111.) Although the ALJ
23 acknowledged this comment by Dr. Joyce, it is true that he did not expressly reject this aspect of
24 the opinion, or fully assess its impact on the opined limitations.
25    Dr. Joyce concluded that plaintiff's progress was guarded because she had stopped
26 taking psychiatric medications for two to three months prior to this visit. (Id. at 115.) A

condition which can be controlled or corrected by medication is not disabling.  See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling).

Moreover, that one's work schedule might be impacted by a medical condition two or three times *a year* does not bespeak any permanent disability so severe that work cannot be accomplished.  Persons in the undersigned's office are affected by various medical conditions two or three times a year, and more, which require their absence; yet these employees perform valuable and efficient work throughout the remainder of the year.  If such limited absence could be considered a significant detriment to one's ability to work, there are not many persons in the United States who would not qualify for disability.  The ALJ did not expressly reject plaintiff's "limitation" as it should not be considered a limitation of any magnitude.

Additionally, other mental health evidence was consistent with Dr. Joyce's opinion, other than the opinion that plaintiff 's bipolar disorder might interfere with work two to three times per year, and supplies substantial evidence to support the ALJ's opinion.  On January 28, 2003, the state agency examiner opined that plaintiff's condition might affect her ability to adapt to change and moderately limited her ability to interact with the public and coworkers. (Tr. at 134.)  He found that plaintiff was only moderately limited in the aforementioned areas, but was not significantly limited in any other areas of functioning. (Id. at 132-33.)

Plaintiff's treating physician, Dr. Brode, indicated that plaintiff could work eight hours per day, but that her depression might occasionally limit her ability to work. Unfortunately, he did not explain these statements.  (Id. at 168.)[2]

---

[2] Although plaintiff references the report of Dr. Khangura, (Tr. 116-118) in his brief, he does not argue that this doctor's report was not considered by the ALJ, or would otherwise indicate plaintiff's inability to perform her past work.  This one-time examining doctor indicated that plaintiff had recurrent severe depression, but also indicated that with medication, plaintiff should be able to work.  Because plaintiff does not urge a remand or reversal based on this

5

The ALJ also questioned the extent of plaintiff's depression in opining that her allegations were not completely credible. For example, plaintiff was bubbly and smiling during her interview with Dr. Joyce, but stated that she was depressed at this time. (Tr. at 113.) There are also minimal notes in the record reflecting complaints of depression or mania. (Id. at 20.) The ALJ further noted that plaintiff accepted a job in January, 2004, but then changed her mind due to transportation issues, not due to disability. (Id.) Substantial evidence supports the ALJ's decision that plaintiff could work despite her bipolar disorder.

B. Whether the ALJ Should Have Used the Testimony of a Vocational Expert in Determining Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ should have utilized a vocational expert because her bipolar disorder may prevent her from working two or three times per year. She claims that this nonexertional impairment does not fit within the guidelines.

The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience. At the fifth step of the sequential analysis, the grids determine if other work is available. See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

Plaintiff misconstrues the ALJ's decision. The ALJ did not utilize the grids; rather, the ALJ found that plaintiff could perform her past work despite any of her impairments. While use of a vocational specialist might be of assistance at this stage of the analysis, a stage wherein plaintiff bears the burden of proof, plaintiff does not suggest what about her old job of mail clerk needed description, elaboration and analysis by an expert vocational person vis-a-vis the mild impairments found by the ALJ. In the absence of any argument and analysis on this point, the court cannot find that the ALJ erred in not utilizing a vocational expert.

\\\\\

---

doctor's report, and probably correctly so, the undersigned will not address it further.

In this case, the ALJ concluded that plaintiff was not disabled at step four of the analysis, and that she could do her past work as a mail clerk. (Tr. at 21.) She explained that this work does not require significant interaction with people or stooping, crouching, or crawling. (Id.)

CONCLUSION

Accordingly, plaintiff's Motion for Summary Judgment or Remand is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

DATED: 1/26/07             /s/ Gregory G. Hollows

                           _____
                           GREGORY G. HOLLOWS
                           U.S. MAGISTRATE JUDGE

GGH/076
Morris0868.ss.wpd